**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BYRON LEWIS,

     Plaintiff - Appellant,

v.

FRITO-LAY, INC.,

     Defendant - Appellee,
and

GREG HENAULT,

     Defendant.

No. 16-3241
(D.C. No. 2:15-CV-07339-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

     Byron Lewis appeals the district court's order granting summary judgment in

favor of Frito-Lay on his claim of race discrimination under 42 U.S.C. § 1981.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

     [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Lewis is African-American. He worked as a packer at Frito-Lay's manufacturing plant in Topeka, Kansas, from 1991 until Frito-Lay terminated his employment in 2012. Frito-Lay has a progressive discipline policy that involves four steps: (1) verbal warning; (2) written warning; (3) suspension; and (4) termination. Frito-Lay also has discretion to offer a Last Chance Agreement ("LCA") to an employee who is otherwise subject to termination.

Lewis received a verbal warning in December 2011, a written warning in February 2012, a suspension in March 2012, and a second suspension in June 2012. In July 2012, Lewis violated another work rule and was placed on indefinite suspension. Due to Lewis' disciplinary history, manufacturing director Scott Denny made the decision to terminate Lewis' employment.

Lewis and his union filed a grievance. Denny met with Lewis and union representative Mark McCarter to discuss the grievance. At the meeting, McCarter asked for an LCA on behalf of Lewis. Denny ultimately denied Lewis' grievance, thereby also denying his request for an LCA. After being notified that he would not receive an LCA, Lewis met with the Executive Board of the union and asked them to take his case to arbitration. The Board declined.

Lewis filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and later filed a complaint in federal district court. He alleged that Frito-Lay discriminated against him on the basis of race by treating him less favorably than similarly situated white employees when it terminated his employment

2

rather than entering into an LCA.  The district court granted Frito-Lay's motion for summary judgment.[1]  Lewis appeals.

## II

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the non-moving party.  Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

We evaluate Lewis' § 1981 claim under the three-part McDonnell Douglas[2] burden-shifting framework.  See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).  Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  See id. at 1226.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  Id.  If the defendant does so, then the plaintiff must show that the defendant's justification is pretextual.  Id.  The parties' arguments on appeal relate solely to the district court's determination at the third step.

### A

A plaintiff may demonstrate pretext by "showing that the plaintiff was treated differently from others similarly situated."  Jaramillo v. Adams Cty. Sch. Dist. 14,

---

[1] The district court also granted summary judgment in favor of Greg Henault, Lewis' supervisor.  Lewis does not appeal that ruling.

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

3

680 F.3d 1267, 1269 (10th Cir. 2012).   But "it is up to the plaintiff to establish not only that differential treatment occurred, but also to rule out nondiscriminatory explanations for the differential treatment."  Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1121 (10th Cir. 2007) (quotation omitted).

The district court determined that Lewis had not presented sufficient evidence that Frito-Lay treated similarly situated employees differently.  It held that Lewis and the white employees he identified (Christine McComas and Mark Dugger) were not similarly situated because they did not share the same immediate supervisor.  Alternatively, it concluded that differential treatment was explained by a nondiscriminatory motive:  the union in both McComas' and Dugger's cases threatened arbitration, prompting Frito-Lay to enter into an LCA.

Lewis argues that Denny, who made the decision whether to offer LCAs to all three employees, should be considered the supervisor for purposes of determining whether Lewis is similarly situated to McComas and Dugger.  But regardless of whether Denny was the relevant supervisor, we agree with the district court that Lewis was not similarly situated to the other employees he identifies.  Denny testified in his deposition that he offered an LCA only if the union threatened or filed arbitration.  And Frito-Lay showed that the union threatened arbitration in McComas' and Dugger's cases, but not in Lewis' case.  Lewis does not challenge on appeal the district court's alternate ground for its ruling on this issue.  Accordingly, we affirm that alternate ruling.  See Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs., 569 F.3d

4

1244, 1252 (10th Cir. 2009) ("When an appellant does not challenge a district court's alternate ground for its ruling, we may affirm the ruling.").

**B**

A plaintiff may also show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherenc[i]es, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." Jaramillo, 680 F.3d at 1269 (quotation omitted).

Lewis asserts that Frito-Lay offered inconsistent explanations as to why it enters into LCAs. In response to a request for information from the EEOC, a Frito-Lay representative explained that the company would enter into an LCA if it was preferable to the uncertain outcome of an arbitration. Denny testified in his deposition that the company would enter into an LCA if the union threatened arbitration. Lewis contends these statements are inconsistent because the former implies an arbitration is already pending and makes no express reference to a threat. We agree with the district court that the statements are not meaningfully inconsistent.

Lewis also argues that Frito-Lay made contradictory statements about when it decides to enter into an LCA. Denny testified that the union's request for an LCA is part of the grievance procedure, and his denial of a grievance is also a denial of an LCA request. He further testified that he never granted LCAs at the third step of the grievance procedure, and that the union's threat of arbitration would occur after he

5

denied the grievance and the LCA. As the district court explained, these statements merely demonstrate that Denny would deny LCA requests in the grievance process, after which the union would threaten arbitration, prompting Denny to negotiate an LCA. We agree with the district court that these statements do not create a genuine dispute of fact as to pretext.

## C

Lastly, a plaintiff can also show pretext by presenting "evidence that the defendant's stated reason for the adverse employment action was false." Kendrick, 220 F.3d at 1230. Lewis argues that a reasonable jury could find that Denny was dishonest about why he decided to enter into an LCA with McComas and Dugger— because the union threatened arbitration over their terminations.

Denny testified that the union could threaten arbitration by placing an employee's name on a list. But in the disciplinary documents relating to McComas and Dugger, there is no list of cases to be arbitrated that contains their names. Lewis therefore argues that a reasonable jury could find Denny's explanation was false. But Denny further testified that the union could also threaten arbitration simply by telling Denny or the Human Resources Department that it would bring the case to arbitration, and that the union did so for both McComas and Dugger. We agree with the district court that the absence of a list in the cases of McComas and Dugger does not create a genuine dispute of material fact.

Lewis also contends that Denny's inability to remember specific details about the union's verbal threats of arbitration in the cases of McComas and Dugger could

lead a jury to find Denny's explanation unworthy of belief. But as the district court explained, Denny's inability to remember details of events that happened years prior does not create a factual dispute as to whether his statements regarding the threats of arbitration were false.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge